IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


YVETTE BLASSINGAME          :
                            :          CIVIL ACTION
        v.                  :
                            :          NO.  17-1351
SOVEREIGN SECURITY, LLC     :


O'NEILL, J.                                                    August 7, 2017

## MEMORANDUM

In the amended complaint presently before me, plaintiff Yvette Blassingame alleges that

her employer, Sovereign Security, LLC, subjected her to sexual discrimination, a sexually hostile

work environment, retaliation, disability discrimination and negligent and intentional infliction

of emotional distress.  Defendant now moves to dismiss the entire complaint under Federal Rule

of Civil Procedure 12(b)(6).  For the following reasons, I will grant the motion as to the claims of

sexual discrimination, hostile work environment and intentional/negligent infliction of emotional

distress, but deny it as to the remainder of the claims.

### FACTUAL BACKGROUND

According to the facts set forth in the amended complaint, plaintiff began working for

defendant on August 14, 2011, as a certified armed guard.  Am. Compl., Dkt. No. 9, ¶ 13.  She

worked forty hours per week, as well as regular additional overtime of approximately ten hours

per week.  Id. ¶ 16.  Because defendant was contracted by the Philadelphia Housing Authority

(PHA) to provide security services at PHA locations, plaintiff was stationed at various PHA sites

throughout Philadelphia.  Id. ¶¶ 17–18.

Beginning in September 2014, plaintiff was stationed at PHA's Information Systems Management (ISM) Building to provide security services. Id. ¶ 19. She was one of the very few women who regularly worked at the ISM Building and was defendant's only employee during her shifts. Id. ¶ 22. During her time at the ISM Building, Plaintiff reported to Mr. Richard Brown, a PHA employee and site supervisor. Id. ¶ 20. Mr. Brown was responsible for overseeing her day-to-day duties while she was stationed at the ISM Building. Id. ¶ 21.

In December 2015, a male PHA employee named Shannon (whose last name is unknown), used the women's bathroom at the ISM Building on at least six occasions while plaintiff was occupying it. Id. ¶ 23. On several of these occasions, plaintiff came in contact with Shannon while inside the bathroom and called out from inside the bathroom to let Shannon known she was there so that he would leave. Id. ¶¶ 24–25. He disregarded these alerts. Id. ¶ 25. Both the women's and the men's bathrooms in the ISM building are clearly and visibly labeled as such on the exterior. Id. ¶ 26.

Sometime in early December 2015, plaintiff complained about Shannon's use of the women's bathroom to both Mr. Christopher Moore, plaintiff's direct supervisor and defendant's employee, and Mr. Brett Treat, an employee and manager of defendant. Id. ¶ 27. Neither Mr. Moore nor Mr. Treat indicated to plaintiff that any corrective action would be taken and, in fact, took no corrective action as a result of her complaint. Id. ¶¶ 28–29. Plaintiff also complained to Mr. Brown about Shannon's use of the women's bathroom while plaintiff was occupying it. Id. ¶ 30.

On December 22, 2016, Mr. Brown witnessed Shannon exit the women's bathroom as plaintiff was entering it. Id. ¶ 31. That same day, Mr. Brown asked plaintiff if she wanted to file

a formal complaint against Shannon.  Id. ¶ 32.  Plaintiff declined, but "asked Mr. Brown in good faith to verbally counsel Shannon for creating a sexually hostile environment."  Id.

On December 31, 2015, Mr. Treat notified plaintiff that he was immediately removing her from the ISM Building and assigning her to another site.  Id. ¶ 33.  When plaintiff questioned the reason for her removal, Mr. Treat stated that Officer Kyle (last name unknown), a PHA employee and liason between PHA and defendant, instructed Mr. Treat that plaintiff was to be fired or, at a minimum, removed from the ISM Building due to an alleged complaint.  Id. ¶ 34. Although plaintiff asked defendant and Mr. Brown for additional information regarding the complaint, Mr. Brown provided no such information.  Id. ¶ 35.  To plaintiff's knowledge, no investigation was made into this alleged complaint and plaintiff was not asked any questions about it by defendant or PHA.  Id. ¶ 36.  When plaintiff asked Brown about the complaint, he responded that he was not aware of it—even though it would have been customary for him to have been made aware of it—and not to worry about it.  Id. ¶¶ 37–38.  Throughout her employment with defendant, plaintiff had never received a complaint and, in fact, was often recommended and personally requested by clients for additional shifts or special events.  Id. ¶ 39.

Defendant replaced plaintiff with a male employee at the ISM Building and, on January 5, 2016, placed plaintiff at the Richard Allen site, also a PHA location, with a less favorable work schedule.  Id. ¶¶ 40–41.  The Richard Allen site was undergoing construction at that time and, therefore, had excess dirt and dust, which aggravated plaintiff's asthma condition.  Id. ¶¶ 12, 42.  Defendant was aware of plaintiff's disability before her employment began, as plaintiff had listed her asthma diagnosis and medications on her employment application.  Id. ¶¶ 43–44.

On January 5, 2016, plaintiff told Mr. Treat that she was having severe asthma complications due to the conditions at the Richard Allen site and asked him to send a relief

person so that she could go to the emergency room.  Id. ¶ 45.  Even though Mr. Treat stated that

he would send a relief person, plaintiff took it upon herself to contact a co-worker to relieve her

at the Richard Allen site.  Id. ¶¶ 46–47.  Plaintiff then immediately went to the emergency room

at Lankenau Hospital in Wynnewood, Pennsylvania.  Id. ¶ 48.  Upon discharge, plaintiff

contacted Mr. Treat and gave him a summary of her diagnosis and hospital discharge

instructions, which included not being around excessive dirt and dust that could aggravate her

medical condition.  Id. ¶ 50.  Because of the construction at the Richard Allen site, she was

unable return to that site after the emergency room visit.  Id. ¶ 51.

On January 6, 2016, defendant removed plaintiff from full-time work and placed her on

unpaid leave, claiming that there was "nothing available."  Id. ¶ 52.  Beginning on January 7,

2016, defendant offered plaintiff on-call assignments at various locations from time to time while

plaintiff remained on unpaid leave.  Id. ¶ 53.  These on-call assignments were neither regular nor

full time, which resulted in a significant reduction in plaintiff's hours.  Id. ¶ 54.  Plaintiff remains

on an unpaid leave of absence.  Id. ¶ 55.

On January 14, 2016, plaintiff filed a timely written charge of discrimination against

defendant with the Equal Employment Opportunity Commission (EEOC), which was also dual

filed with the Pennsylvania Human Relations Commission (PHRC).  On or about January 11,

2017, the EEOC issued plaintiff a Notice of Right to Sue.  Id. ¶ 10.

On March 27, 2017, plaintiff initiated the current litigation and, on June 20, 2017, she

filed her first amended complaint.  The amended complaint sets forth nine causes of action as

follows:  (1) sex discrimination in violation of Title VII; (2) harassment and hostile and abusive

working environment in violation of Title VII; (3) retaliation in violation of Title VII; (4)

disability discrimination in violation of the Americans With Disabilities Act (ADA); (5) sex

discrimination in violation of the Pennsylvania Human Relations Act (PHRA); (6) harassment

and hostile and abusive working environment in violation of the PHRA; (7) retaliation in

violation of the PHRA; (8) disability discrimination in violation of the PHRA; and (9) intentional

infliction of emotional distress.

On July 6, 2017, Defendant filed the current motion to dismiss pursuant to Federal Rule

of Civil Procedure 12(b)(6), Dkt. No. 11, and plaintiff responded on July 20, 2017, Dkt. No. 12.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of

demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  Fed. R.

Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  The United

States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his

'entitle[ment] to relief' requires more than labels and conclusions."  Bell Atl. Corp. v. Twombly,

550 U.S. 544, 555 (2007) (quotations omitted).  "[T]hreadbare recitals of the elements of a cause

of action, supported by mere conclusory statements, do not suffice" and  "only a complaint that

states a plausible claim for relief survives a motion to dismiss."  Ashcroft v. Iqbal, 556 U.S. 662,

678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  Id.  A complaint does not show an entitlement to relief when the well-pleaded facts do

not permit the court to infer more than the mere possibility of misconduct.  Id.

The Court of Appeals has detailed a three-step process to determine whether a complaint

meets the pleadings standard.  Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2014).  First, the court

outlines the elements a plaintiff must plead to state a claim for relief.  Id. at 365.  Next, the court

must "peel away those allegations that are no more than conclusions and thus not entitled to the

assumption of truth." Id. Finally, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" Id., quoting Iqbal, 556 U.S. at 679. The last step is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id., quoting Iqbal, 556 U.S. at 679.

## DISCUSSION[1]

### I. Failure to Exhaust

Defendant first argues that plaintiff has failed to exhaust her administrative remedies with respect to her sexually hostile work environment claims set forth in Counts II and VI of the Amended Complaint. Specifically, defendant contends that, in her charge of discrimination filed with the EEOC and the PHRC, plaintiff checked off "retaliation" and "disability" as bases for alleged discrimination, without ever identifying "sex" as an additional basis of discrimination. Accordingly, defendant asserts that any sex-based discrimination claims must be dismissed. I agree.

A Title VII plaintiff is required to exhaust all administrative remedies before bringing a claim for judicial relief. 42 U.S.C. § 2000e–5(e); Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir.1996); DeLa Cruz v. Piccari Press, 521 F. Supp. 2d 424, 431 (E.D. Pa. 2007). To do so, the plaintiff must "fil[e] a timely discrimination charge with the EEOC." DeLa Cruz, 521 F. Supp. 2d at 431, citing Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984). The purpose of this requirement is "(1) to ensure 'that an employer is made aware of the complaint lodged against him and is given the opportunity to take remedial action,' and (2) to give 'the EEOC the

---

[1]     Plaintiff does not contest either the dismissal of her sexual discrimination claims in Counts I and V or the dismissal of her tortious infliction of emotional distress claim in Count IX. Accordingly, I will grant the motion to dismiss these claims without discussion of defendant's arguments.

opportunity to fulfill its statutory duties of eliminating unlawful practices through the administrative process.'" O'Donnell v. Michael's Family Rest., Inc., No. 07–5386, 2008 WL 2655565, at *2 (E.D. Pa. July 1, 2008), quoting Jackson v. J. Legis Crozer Library, No. 07–481, 2007 WL 2407102, at *5 (E.D. Pa. Aug. 22, 2007), citing Bihler v. Slinger Co., 710 F.2d 96, 99 (3d Cir.1983).[2] In Title VII actions, failure to exhaust administrative remedies is an affirmative defense on which the defendant bears the burden of proof. Williams v. Runyon, 130 F.3d 568, 573 (3d Cir. 1997).

The administrative exhaustion requirement "is tempered by a fairly liberal construction given to EEOC charges." Schouten v. CSX Transp., Inc., 58 F. Supp. 2d 614, 616 (E.D. Pa. 1999). Generally, a Title VII plaintiff cannot bring claims in a civil lawsuit that were not first included in an EEOC charge and exhausted at the administrative level. Burgh v. Borough Counsel of Montrose, 251 F.3d 465, 469–70 (3d Cir. 2000). It is well-established that merely checking off the box on the charge form is insufficient to exhaust it as a claim. McCutchen v. Sunoco, Inc., No. Civ.A.01–2788, 2002 WL 1896586, at *3 (E.D. Pa. Aug. 16, 2002), aff'd 80 F. App'x 287 (3d Cir. 2003). Rather, a plaintiff that checks off a box for a particular type of discrimination on a Charge form, but then leaves the form bereft of any allusion to allegations of such discrimination cannot be deemed to have exhausted that claim. Id.

---

[2]     "Although the PHRA does not contain an analogous [exhaustion of administrative remedies] requirement, courts have held that the PHRA should be interpreted consistently with Title VII." McLaughlin v. Rose Tree Media Sch. Dist., 52 F. Supp. 2d 484, 492 (E.D. Pa. 1999) (citations omitted). "To bring suit under the PHRA, a plaintiff must first have filed an administrative complaint with the PHRC within 180 days of the alleged act of discrimination." Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997), citing 43 Pa. Cons. Stat. §§ 959(a), 962.

On the other hand, the mere failure to check a specific box on the EEOC charge form is not a fatal error. Doe v. Kohn Nast & Graf, P.C., 866 F. Supp. 190, 196 & n.2 (E.D. Pa. 1994). Rather, "[t]he most important consideration in determining whether the plaintiff's judicial complaint is reasonably related to his EEOC charge is the factual statement." Id. at 197. Thus, "if the allegations made in the complaint filed in this Court could be 'reasonably expected to grow out of' those contained . . . in the EEOC charge, the pleading of the plaintiff will withstand a motion to dismiss, as the administrative remedies available to plaintiff will have been exhausted." Schouten, 58 F. Supp. 2d at 616, quoting Page v. ECC Mgmt. Servs., No. 97–2654, 1997 WL 762789, at *3 (E.D. Pa. Dec. 8, 1997) (further quotations omitted). Stated differently, where a plaintiff attempts to assert a claim at the district court level that was not raised in the administrative charge, the claim is considered exhausted if it is "fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." Antol, 82 F.3d at 1295, quoting Waiters, 729 F.2d at 237. A reasonable EEOC investigation should include claims not specifically mentioned in the EEOC charge "where there was a close nexus between the facts supporting the claims raised in the charge and those in the complaint." Pourkay v. City of Philadelphia, No. Civ.A.06–5539, 2009 WL 1795814, at *5 (E.D. Pa. June 23, 2009), citing Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208, 1212 (3d Cir. 1984). "In such a case, the Court may reasonably expect an awareness on the part of the defendant that such allegations are likely." Schouten, 58 F. Supp. 2d at 616–17.

Plaintiff concedes that only "retaliation" and "disability" were specifically checked off on her charge of discrimination filed with the EEOC and PHRC. Nonetheless, she asserts that the particulars of her charge should have put the EEOC and PHRC on notice that sexual harassment was involved. Specifically, in support of her charge, she alleged as follows:

On August 14, 2011 I was hired by Respondent as an Armed Guard. Throughout my employment I was placed at multiple buildings managed by the Philadelphia Housing Authority (PHA) to perform security. From September 2014 through November 2015 I was stationed at PHA's Information Systems Management (ISM) building. I never had any performance issues nor was ever disciplined. In early December 2015, a PHA employee, Mr. Shannon LNU [last name unknown] used the women's bathroom while I was occupying it. I complained to his supervisor, Mr. Richard Brown. About a week later, Mr. Shannon LNU was caught using the woman's restroom again. Mr. Brown asked if I'd like to file a formal complaint. I declined and asked Mr. Brown to verbally counsel Mr. Shannon LNU for creating a sexually hostile environment. On December 31, 2015 Sgt. Kyle LNU of the PHA instructed my supervisor Mr. Brad Treat that I was to be removed from the ISM building due to an alleged employee complaint. On January 5, 2016 Respondent placed me at another PHA site (Richard Allen site). Due to the site undergoing construction, creating an abundance of dirt and dust, my disability was aggravated forcing me to visit the emergency room. Following my hospital visit, I have yet to return to work.

Mr. Brad Treat, supervisor, removed me from my post at the ISM building at the request of Sgt. Kyle LNU and removed me from my post at the Richard Allen site and informed me that there [were] no other vacant posts for reassignment.

I believe, in violation of Title VII of the Civil Rights Act of 1964, as amended, I was reassigned to a less desirable assignment and had my hours reduced in retaliation for opposing unlawful harassment. Upon being transferred, I further allege being denied a reasonable accommodation for my disability, in violation of the Americans with Disabilities Act of 1990, as amended. Mr. Treat failed to engage in the interactive process and placed me on an unpaid leave of absence.

Compl., Ex. A.

Reading these allegations liberally, I find that plaintiff has not exhausted her claim of

hostile work environment. A plaintiff alleging a hostile work environment claim "must establish

that: (1) [s]he suffered intentional discrimination because of [her] [gender]; (2) the

discrimination was pervasive and regular; (3) it detrimentally affected [her]; (4) it would have

detrimentally affected a reasonable person of the same protected class in [her] position; and (5) there is a basis for vicarious liability." Caver v. City of Trenton, 420 F.3d 243, 262 (3d Cir. 2005), quoting Cardenas v. Massey, 269 F.3d 251, 260 (3d Cir. 2001)). "For a hostile work environment claim to succeed, the conduct complained of must be adverse, severe, pervasive or regular and of the kind that would have detrimentally affected a reasonable person in like circumstances." Harley v. U.S. Sec'y of Treasury, 444 F. App'x 594, 595 (3d Cir. 2011), citing Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 104 (3d Cir. 2009). The Court of Appeals found a hostile work environment claim to be within the scope of an initial EEOC charge where the charge "alleged the plaintiff was subjected to an 'abusive atmosphere,' a phrase which is interchangeable with 'hostile work environment.'" See Barzanty v. Verizon PA, Inc., 361 F. App'x 411, 414 (3d Cir. 2010); see also Raffaele v. Potter, No. 09–3622, 2012 WL 33035, at *5 (E.D. Pa. Jan. 6, 2012) ("[A] claim for hostile work environment is based on the 'pervasiveness' of the employer's discriminatory conduct and is fundamentally different from a claim for disparate treatment, which focuses on discrete events.").

In this case, plaintiff's administrative charge does not alert the agency to any severe, pervasive or regular behavior that detrimentally affected her. Rather, she described a total of two incidents in which "Mr. Shannon," a PHA employee and not an employee of defendant, used the women's bathroom while plaintiff was occupying it. Plaintiff alleges no other sexually harassing conduct that accompanied these events. After the first instance, plaintiff reported it to Mr. Shannon's supervisor, who was also not one of defendant's employees. A week later, Mr. Shannon was caught using the women's bathroom again and Mr. Brown immediately acted upon the matter, asking if plaintiff wanted to file a formal complaint. Plaintiff expressly declined to file any such complaint, but simply asked that Mr. Shannon be counseled. Although plaintiff

used the buzzwords "sexually hostile environment," it was solely in the context of requesting

that Mr. Shannon be made aware that his use of the women's bathroom created such a situation.

At no point does plaintiff allege that defendant either perpetuated or permitted any ongoing

sexually hostile environment.  Quite to the contrary, plaintiff's allegations suggest that defendant

was not made aware of the situation, and that PHA, who managed the site, promptly addressed

the offensive behavior.  Nothing in the charge indicates that the behavior became pervasive.

While plaintiff's amended complaint now suggests that Mr. Shannon's behavior was, in fact,

repeated and that defendant was notified but failed to act, no such facts were before any

administrative agency.  This absence of allegations from which the agency could infer a hostile

work environment, together with plaintiff's failure to check the box for either "sex" or

"continuing" action, compels the conclusion that plaintiff's administrative complaint does not

"fairly encompass" a hostile work environment claim.

In light of the foregoing, I find that plaintiff has not exhausted her hostile work

environment claims (Counts II and VI).  As exhaustion is a prerequisite to bringing such claims

in this court, I will grant defendant's motion to dismiss on this ground.

## II.      Retaliation Claim

Counts III and VII of the amended complaint allege claims of retaliation.  Section 704(a)

of Title VII provides in pertinent part:

> It shall be an unlawful employment practice for an employer to
> discriminate against any of his employees . . . because he has made
> a charge, testified, assisted, or participated in any manner in an
> investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a).  To establish discriminatory retaliation under Title VII, a plaintiff must

demonstrate that: (1) she engaged in activity protected by Title VII; (2) the employer took an

adverse employment action against her; and (3) there was a causal connection between her

participation in the protected activity and the adverse employment action.[3] <u>Nelson v. Upsala College</u>, 51 F.3d 383, 386 (3d Cir. 1995).

Defendant now asserts that plaintiff's retaliation claim fails for two reasons. First, it claims that plaintiff has not alleged any protected activity. Second, it argues that plaintiff cannot establish a causal connection between her complaints and her termination. Considering each argument separately, I will decline to grant defendant's motion to dismiss.

**A.      <u>Protected Activity</u>**

Under Title VII, it is unlawful for an employer to discriminate against an employee who either "[1] . . . has opposed any practice made an unlawful employment practice by this subchapter, or [2] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). Whether the employee opposes, or participates in a proceeding against, the employer's activity, the employee must hold an objectively reasonable belief, in good faith, that the activity he or she opposes is unlawful under Title VII. <u>Moore v. City of Phila.</u>, 461 F.3d 331, 341 (3d Cir. 2006), <u>as amended</u> (Sept. 13, 2006).

Under the Rule 12(b)(6) standard of review, I find that plaintiff has plausibly pled that she engaged in protected activity. Plaintiff alleges that she was one of the very few women who worked in her section of the ISM building. Am. Compl. ¶ 22. Beginning in December 2015, a male employee of PHA, Shannon, used the women's bathroom at the ISM Building site on at least six occasions while plaintiff was occupying it. <u>Id.</u> ¶ 23. Plaintiff complained to her

---

[3]      The analysis required for adjudicating Plaintiff's Title VII and PHRA claims is identical. <u>See</u> <u>Goosby v. Johnson & Johnson Med., Inc.</u>, 228 F.3d 313, 317 n. 3 (3d Cir. 2000). Accordingly, I address the Title VII and PHRA claims jointly.

supervisors, Mr. Moore and Mr. Treat, and one of PHA's employees, Mr. Brown. Id. ¶¶ 27, 30. Although plaintiff declined to file a formal complaint, she asked Mr. Brown to verbally counsel Shannon for creating a "sexually hostile environment," thus demonstrating plaintiff's good faith belief that the activity she was opposing was unlawful.

In its reply brief, defendant contends that although plaintiff may have had a "good faith" belief about the nature of Shannon's conduct, it was not objectively reasonable as is also required for a retaliation claim. Defendant asserts that plaintiff fails to allege that Shannon made a single comments toward her, touched her or even did anything other than wholly ignore her, making her current claims of harassment unounded. In support, defendant cites to a case from the Western District of Pennsylvania in which the court found that "no reasonable person could conclude that a few isolated incidents involving a man's use of the women's bathroom, without more—particularly when one did not witness the conduct—constituted unlawful harassment or discrimination." Reynolds v. Port Auth. of Allegheny Cnty., No. 08-268, 2009 WL 1837917, at *7 (W.D. Pa. June 26, 2009).

Reynolds, however, is distinguishable from the present case in several respects. In Reynolds, the court considered the retaliation claim on a motion for summary judgment after discovery. Id. at *1. Moreover, the plaintiff had never seen her supervisor use the women's restroom, but only heard from another employee that the supervisor had urinated in the ladies' room "on a number of occasions"—conduct that the plaintiff believed was *racially* discriminatory. Id. at *6. On a single occasion, plaintiff blocked her supervisor from entering the ladies' room by commenting that she did not want him to enter, and later claimed that this statement constituted protected speech. Id. at *7. The court remarked that, aside from the fact that the plaintiff did not witness the conduct, it was not "objectively reasonable to believe that a

supervisor's very occasional entrance into an otherwise empty ladies' room was proscribed by Title VII." Id.

By contrast, the motion currently before me is not a motion for summary judgment, but rather a motion to dismiss under Rule 12(b)(6) for which I must take all well-pled allegations in the amended complaint as true. That amended complaint explicitly alleges Shannon used the women's bathroom on at least six occasions in less than a month and, unlike in Reynolds, plaintiff came into contact with him on several occasions. Am. Compl. ¶¶ 23–25. Further, plaintiff called out to Shannon from inside the bathroom to get him to leave, requests which he ignored. Id. ¶¶ 24–25. Finally, plaintiff did not simply address her complaint to the offending employee, as the plaintiff did in Reynolds, but actually spoke to both her supervisor and Shannon's supervisor, explaining that she felt Shannon's actions created a sexually hostile environment. Id. ¶¶ 27–29, 31–32. At this juncture of the case, I find that such allegations are sufficient to plead that plaintiff engaged in protected activity for the purposes of her retaliation claim.

### B.  Causation

To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007). The temporal proximity of a retaliatory act to a plaintiff's exercise of his or her First Amendment rights is probative, but not dispositive, of the causation element. Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003); see also Kachmar v. Sungard Data Sys., Inc., 109 F.3d 173, 178 (3d Cir. 1997) (stating that "temporal proximity merely provides an evidentiary basis from which an

inference can be drawn").  For temporal proximity alone to establish causation, the "timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred."  Marasco, 318 F.3d at 512, quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997)).  The Court of Appeals has suggested that a temporal proximity of two days is sufficient to establish causation, see Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 & n.5 (3d Cir. 2000), whereas a temporal proximity of ten days is sufficient to establish causation only when accompanied by other evidence of . . . wrongdoing, Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 (3d Cir. 2003)."  Conklin v. Warrington Tsp., No. 06–2245, 2009 WL 1227950, at *3 (M.D. Pa. April 30, 2009).  "This suggests that the temporal proximity must be measured in days, rather than in weeks or months, to suggest causation without corroborative evidence."  Id.

In the Amended Complaint, plaintiff alleges that she complained to both her employer, through Mr. Treat and Mr. Moore, and to Mr. Brown about Shannon's behavior sometime in "early December 2015."  Am. Compl. ¶¶ 27, 30.  On December 22, 2015, after Shannon was caught using the women's bathroom, plaintiff made a request that Shannon be verbally counseled for creating a sexually hostile environment.  Id. ¶ 32.  Only nine days later—and without any obvious intervening incident besides a mysterious "complaint" against plaintiff—Mr. Treat notified plaintiff that he was immediately removing her from the ISM building and reassigning her.  Id. ¶¶ 33–34.  Although defendant argues that plaintiff includes no allegations of animus by Mr. Treat, such allegations are unnecessary given the suggestive temporal proximity between her complaint and the retaliatory action.[4]  Moreover, defendant's argument that "Plaintiff offers no

---

[4]    In its reply brief, defendant argues that I must focus on the timing between plaintiff's complaint to Mr. Treat in "early" December 2015 and Officer Kyle's request to have plaintiff transferred, rather than on plaintiff's complaint to Mr. Brown and Officer Kyle's request for

evidence to support that [Mr.] Treat would fabricate the complaint against her or that he had any retaliatory animus against her for complaining about Shannon," Def.'s Mem. Supp. Mot. to Dismiss, ECF No. 11-1, 16, is misplaced as plaintiff has no burden to either produce evidence in response to a motion to dismiss or discredit any possible innocent motivations for Mr. Treat's actions. Taking the alleged facts and all reasonable inferences therefrom in the light most favorable to plaintiff, I find that plaintiff has plausibly pled causation between her complaint about Shannon and her subsequent transfer.

## III.    Disability Discrimination

Finally, defendant moves to dismiss plaintiff's claims of disability discrimination in Counts IV and VIII of the amended complaint. As I find that plaintiff adequately pleads disability discrimination, I decline to dismiss these causes of action.

The ADA[5] was enacted in 1990 to "prevent otherwise qualified individuals from being discriminated against in employment based on a disability." Gaul v. Lucent Techs. Inc., 134

---

plaintiff's transfer. Based on the allegations of the amended complaint, however, plaintiff's first expression of her belief that Shannon's actions created a sexually hostile work environment was her complaint to Mr. Brown on December 22, 2015, which is temporally proximate to the December 31, 2015 request by Officer Kyle. Although such allegations will be insufficient to establish causation at the summary judgment stage of litigation, they suffice for purposes of the present motion.

[5]    In the past, courts in this Circuit analyzed ADA and PHRA claims simultaneously, because the "PHRA [wa]s basically the same as the ADA in relevant respects, and 'Pennsylvania courts . . . generally interpret the PHRA in accord with its federal counterparts.'" Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 382 (3d Cir. 2002), quoting Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996). The ADA amendments (ADAAA), however, relaxed the ADA's standard for disability effective January 1, 2009, but the Pennsylvania legislature has failed to enact a similar amendment to the disability standard under the PHRA. Szarawara v. Cnty. of Montgomery, 12–5714, 2013 WL 3230691, at *2 (E.D. Pa. June 27, 2013) (holding that the PHRA has not been amended like the ADAAA to relax the standard for disability, and therefore, it was necessary to analyze plaintiff's ADA and PHRA claims separately); Deserne v. Madlyn & Leonard Abramson Ctr. for Jewish Life, Inc., No. 10–03694, 2012 WL 1758187, *3 n.3 (E.D.

F.3d 576, 579 (3d Cir. 1998), citing 29 C.F.R. pt. 1630, app. at 347–48 (1997). Under the ADA,

employers are prohibited from "discriminat[ing] against a qualified individual with a disability

because of the disability of such individual in regard to job application procedures, the hiring,

advancement, or discharge of employees, employee compensation, job training, and other terms,

conditions, and privileges of employment." 42 U.S.C. § 12112(a). A prima facie case is

established by showing three elements. First, the plaintiff must allege that he is disabled within

the meaning of the ADA. Turner v. Hershey Chocolate U.S., 440 F.3d 604, 611 (3d Cir. 2006).

Second, the employee must establish that she is a qualified individual within the meaning of the

ADA. Turner, 440 F.3d at 611. A qualified individual is "an individual with a disability who,

with or without reasonable accommodation, can perform the essential functions of the

employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Finally, the

plaintiff must establish that he has suffered an "adverse employment decision as a result of

discrimination." Turner, 440 F.3d at 611. An "adverse employment decision" under the ADA

"encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also

includes failing to make reasonable accommodations for a plaintiff's disabilities." Taylor v.

Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999).

     Defendant does not dispute that plaintiff suffered from a disability. It claims, however,

that plaintiff has failed (1) to make a showing that she suffered an adverse employment action

---

Pa. May 17, 2012) ("To date, Pennsylvania has not made parallel amendments to the PHRA or
the regulations implementing the PHRA."). Nevertheless, while the disability standards are
different, the remaining elements of an ADA and PHRA claim are essentially the same and can
be analyzed together. Rubano v. Farrell Area Sch. Dist., 991 F. Supp. 2d 678, 689 n.7 (W.D. Pa.
2014).

     Defendant, in this case, does not challenge plaintiff's status as disabled, but rather
focuses on the other elements of the ADA and PHRA claims. Because those elements are
identical for both statutes, I analyze them together.

causally related to her disability; and (2) to allege facts that defendant unlawfully failed to provide a reasonable accommodation. I hold that plaintiff's claim survives a motion to dismiss.

### A. **Adverse Employment Action**

Defendant first disputes plaintiff's claim that she suffered an adverse employment action related to her disability. Specifically, it contends that (a) plaintiff fails to allege facts that anyone employed by defendant was aware of her asthma and (b) it was upon her request that she was removed from the Richard Allen site and no one gave her a hard time about it.

The amended complaint, however, belies this contention, alleging that "[d]efendant was aware of [p]laintiff's disability before [p]laintiff's employment with [d]efendant began in August 2011" as defendant required her to list medications and purpose, and plaintiff stated "that she was taking medication for asthma on her employment application." Am. Compl. ¶¶ 43–44. Further, when she left her position at the Richard Allen site, she contacted Mr. Treat and told him she was having severe complications from her asthma due to the conditions there. Id. ¶ 45. Following discharge from the hospital, plaintiff contacted Mr. Treat and explained that her medical instructions included not being around excessive dirt and dust. Id. ¶¶ 48–49. While plaintiff voluntarily chose to leave her position at the Richard Allen site, defendant placed her on an unpaid leave instead of moving her to a new full-time position at a different site. Id. ¶¶ 52–53. These allegations permit a plausible inference that plaintiff suffered a reduction in hours that was causally connected to her disability.

### B. **Failure to Accommodate or Engage in the Interactive Process**

Defendant's second argument challenges plaintiff's claim that defendant failed to provide her with a reasonable accommodation to allow her to perform her job. Specifically, defendant contends that plaintiff fails to allege that she requested a reasonable accommodation or made any

representation that she needed an accommodation. I disagree and find that the amended complaint allows the inference that plaintiff sufficiently communicated her need for reasonable accommodation.

To show that an employer violated its duty to engage in the interactive process under the ADA, an employee must show:

> 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonable accommodated but for the employer's lack of good faith.

Conneen v. MBNA Am. Bank, N.A., 334 F.3d 318, 330–31 (3d Cir. 2003). "'Once a qualified individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation.'" Jones v. United Parcel Serv., 214 F.3d 402, 407 (3d Cir. 2000), quoting 29 C.F.R. Pt. 1630, App. § 1630.9, at 361. "Under the ADA, an employer discriminates against an employee by not making 'reasonable accommodations to the known physical or mental limitations of the [employee] unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer].'" Colwell v. Rite Aid, 602 F.3d 495, 504–05 (3d Cir. 2010), quoting Williams v. Phila. Hous. Auth. Police Dept., 380 F.3d 751, 761 (3d Cir. 2004) (internal quotations and citations omitted).

Notably, "[t]he law does not require any formal mechanism or 'magic words' to notify an employer that an employee needs an accommodation." Conneen, 334 F.3d at 332. The law only requires that "[t]he employer . . . have enough information to know of 'both the disability and desire for an accommodation,' or circumstances must at least be sufficient to cause a reasonable employer to make appropriate inquiries about the possible need for an accommodation." Id.,

quoting <u>Taylor</u>, 184 F.3d at 313. "Once proper notice has been provided, 'both parties have a duty to assist in the search for an appropriate reasonable accommodation and to act in good faith.'" <u>Colwell v. Rite Aid Corp.</u>, 602 F.3d 495, 507 (3d Cir. 2010), <u>quoting</u> <u>Conneen</u>, 334 F.3d at 330 (further quotations omitted).

Notwithstanding defendant's contrary argument, I find that the amended complaint plausibly pleads a request for a reasonable accommodation. As noted above, plaintiff alleges that defendant was well aware of plaintiff's disability from the date she was hired. On the date she left her job to go to the emergency room, she contacted her employer to indicate that she was having severe complications from her disability due to the conditions at the Richard Allen site. Am. Compl. ¶ 45. Following her discharge from the hospital, plaintiff told her employer that her discharge instructions included not being around excessive dirt and dust which would aggravate her medical condition. <u>Id.</u> ¶¶ 49–50. Plaintiff further avers that throughout her employment with defendant, she had been stationed at various sites throughout Philadelphia. <u>Id.</u> ¶ 17. Such allegations allow for the reasonable inferences that (a) by providing defendant with notice of both her disability and her hospital discharge instructions, plaintiff was requesting a reasonable accommodation of transfer to full-time work at a different work site, as she had previously; and (b) because defendant had employees stationed at multiple work sites in Philadelphia, its refusal to provide plaintiff with full-time work at another site constituted a failure to engage in the interactive process. While discovery may ultimately fail to uncover sufficient evidence to support this theory,[6] the well-pled allegations of the amended complaint require that this claim survive Rule 12(b)(6) scrutiny.

---

[6]     In its reply brief, defendant attaches various documents showing that, in March 2016, defendant actually placed plaintiff in a position at PHA Admissions, which was a position defendant believed would not affect plaintiff's asthma. Def.'s Reply Brief, ECF No. 13, at p. 14.

## CONCLUSION

In light of the foregoing, I will grant defendant's motion to dismiss Counts I, II, V, VI and IX with prejudice.   To the extent, however, that defendant seeks dismissal of plaintiff's allegations of retaliation or disability discrimination, as set forth in Counts III, IV, VII, and VIII, I find that the amended complaint plausibly pleads these causes of action and I will deny the motion to dismiss on those grounds.

An appropriate Order follows.

---

The first day that plaintiff was assigned to this new role, she claimed to have gotten her chair caught in the floor tiles and fallen, injuring herself.  <u>Id.</u>  Plaintiff has not been able to work since and has a worker's compensation claim pending.  <u>Id.</u>  This evidence, according to defendant, establishes that it accommodated plaintiff's initial request and found her another work location, where plaintiff would presumably still be working had she not fallen.

While defendant's argument may ultimately be successfully in a properly-filed motion for summary judgment after the exchange of discovery, it is not a proper basis for Rule 12(b)(6) dismissal.  As a primary matter, defendant relies on documents outside the pleadings and has not established that I may take judicial notice of these documents for purposes of this motion. Moreover, nothing in defendant's reply brief or supporting documents establishes that plaintiff's new position was a full-time position as she had previously held.  Therefore, I do not find that this argument provides grounds for dismissal of plaintiff's disability discrimination claims.